[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Wells v. Lakota Local Schools Bd. of Edn.*, Slip Opinion No. 2024-Ohio-3316.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-3316

THE STATE EX REL. WELLS *v*. LAKOTA LOCAL SCHOOLS BOARD OF EDUCATION ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Wells v. Lakota Local Schools Bd. of Edn.*, Slip Opinion No. 2024-Ohio-3316.]

*Public records—Attorney-client privilege—Demand letter—Attorney invoices— Writ granted in part and relator awarded statutory damages, some attorney fees, and costs.*

(No. 2023-0190—Submitted July 9, 2024—Decided September 3, 2024.)

IN MANDAMUS.

————————————

The per curiam opinion below was joined by KENNEDY, C.J., and DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ.  FISCHER, J., concurred in part and dissented in part and would not award statutory damages.

**Per Curiam.**

{¶ 1} This is an original action in mandamus brought under Ohio's Public Records Act, R.C. 149.43, by relator, Vanessa Wells, against respondents, the Lakota Local Schools Board of Education and its treasurer, Adam Zink, who maintains the board's public records (collectively, "Lakota"). Wells seeks a writ of mandamus ordering Lakota to produce public records. She also seeks awards of statutory damages, attorney fees, and court costs. Wells has additionally filed a motion for oral argument or leave to file a supplemental brief. We grant the writ in part and deny it in part as moot, award $2,000 in statutory damages, award some attorney fees and deny others, award court costs, and deny the motion.

## I. BACKGROUND

This case involves two separate public-records requests that Wells sent.

### A. *The first request*

{¶ 2} On January 4, 2023, Wells sent her first request by email to Zink and Brodi Conover of Bricker Graydon, the law firm with which the board had contracted to represent it on public-records requests. Wells requested "any and all legal documentation (whether email or regular mail) sent from the law firm of Elizabeth Tuck/ matt Miller to all members of the lakota school board. Thank you in advance for a timely response." At the time, Matt Miller was the superintendent of Lakota Local Schools, and Tuck was his private counsel. Wells had a child in the district and became concerned after allegations surfaced about Miller's conduct.

{¶ 3} Conover responded to Wells via email on January 5, telling her that her request was overbroad, but stated that Lakota had searched its records beginning July 1, 2022, for email communications between Tuck and the board's members. Conover attached to his email a copy of a November 2022 cease-and-desist letter that Tuck had sent to one of the board's members, demanding that she immediately stop defaming Miller.

**{¶ 4}** Wells then sent a follow-up email to Conover on January 5, stating that, in an effort to clarify her original request, she now requested

> all email or regular mail communication between the law firm of Elizabeth Tuck and all current lakota school board members, as well as legal counsel for the current board members; from the months of September 2022 until the current date of Jan 1, 2023 in regards to Matthew Miller & his employment at Lakota school district as the superintendent. Including, but not limited to the most recent investigation done by Jackson Lewis, notices, legal documents, letters to preserve, cease and desist & all other attachments and communication in regards to MatthewMiller.

**{¶ 5}** On January 11, Conover emailed Wells, reattaching the cease-and-desist letter and reiterating that the district had searched for and sent her the records she had asked for. Conover then told Wells that (1) if she was seeking communications between the board and its attorneys, then she could not obtain records of such communications because they were protected from disclosure under attorney-client privilege and (2) if she was seeking communications between "two non-public entities (that is, two separate law firms), those records are not a public record because they are not created, received, or otherwise under the jurisdiction of a public office."

### B. *The second request*

**{¶ 6}** On January 19, 2023, Wells sent her second request by email to Conover, the district's public-records portal, and Zink, this time requesting "all legal invoices & documents from the date of January 1, 2022, until the current date of January 19, 2023 from all board/attorneys in Lakota Local school district." Conover responded to Wells by email the same day, attaching redacted invoices

from 2022 and stating that he would look for invoices from 2023. Conover redacted the name of the attorney providing the service, the hours spent to provide the service, the attorney's rate, and the narrative describing the service. Conover stated that the redactions were necessary to protect information covered by attorney-client privilege. He also redacted bank-account-related information based on R.C. 149.45 (authorizing redaction of personal information).

{¶ 7} In September 2023, about eight months after Wells sent her requests and seven months after Wells brought this case, Conover resent the invoices to Wells's attorney, retaining the redactions for the narratives and bank-account-related information, but removing the redactions for the other information mentioned in the preceding paragraph.

### C. This proceeding

{¶ 8} In February 2023, Wells filed a complaint in this court, which she later amended, seeking a writ of mandamus ordering the production of the public records that she had requested and awards of statutory damages, attorney fees, and court costs. We granted an alternative writ scheduling the presentation of evidence and briefs and directing Lakota to file unredacted copies of the contested records under seal for an in camera inspection. *See* 2023-Ohio-4259. The case is ripe for decision.

## II. ANALYSIS

### A. Wells's motion for oral argument or for leave to file a supplemental brief

{¶ 9} Wells has filed a motion asking us to either set the matter for oral argument or allow her an opportunity to file a supplemental brief. According to Wells, this relief is necessary because Lakota advanced an argument in its merit brief that she had not anticipated. Wells overlooks that under the terms of this court's alternative-writ schedule, she had the opportunity to file a reply brief in response to Lakota's merit brief. *Id.* We deny Wells's motion.

4

*B. Mandamus*

**{¶ 10}** Mandamus is an appropriate remedy to compel compliance with R.C. 149.43. *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 2006-Ohio-903, ¶ 6. To obtain the writ, Wells must show that she has a clear legal right to the requested relief and that Lakota has a clear legal duty to provide it. *State ex rel. Ellis v. Maple Hts. Police Dept.*, 2019-Ohio-4137, ¶ 5. Wells bears the burden of production to plead and prove facts showing that she requested public records and that Lakota did not make the records available. *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 26.

**1. The demand letter**

**{¶ 11}** Wells argues that with respect to the records she requested in her first request, the court should grant a writ solely to compel the disclosure of what she calls a "demand letter." Wells attests that she was told of the demand letter's existence by a district employee and that the letter threatened the board with litigation.[1] The demand letter, which has been filed under seal, contains a settlement offer sent by Tuck on Miller's behalf.

**{¶ 12}** Lakota insists that it properly withheld the demand letter because the letter constitutes a privileged settlement communication that is excepted from disclosure under the Public Records Act. The general rule articulated by this court is that a "settlement agreement of a lawsuit in which a public office is a party is a public record subject to disclosure under R.C. 149.43." *State ex rel. Findlay Publishing Co. v. Hanckock Cty. Bd. of Commrs.*, 1997-Ohio-353, ¶ 9; *see also State ex rel. Cincinnati Enquirer v. Dupuis*, 2002-Ohio-7041, ¶ 15 (same).

---

1. To be clear, Conover *did* produce the cease-and desist letter that Miller's attorney had sent to a board member threatening litigation in response to the accusations concerning Miller. If that letter alone were at issue, then Wells's letter-related mandamus claim would be moot.

Although there is no evidence in this case that Miller ever brought a lawsuit against the board, Lakota acknowledges in its brief that it would have been required to produce to Wells a copy of any agreement settling a lawsuit between itself and Miller ("Without question, if a final settlement agreement had been reached, approved by the Board, and entered into, the settlement agreement would be a public record").

{¶ 13} But Lakota makes a different argument here, distinguishing between documents that memorialize settlement and those exchanged in furtherance of settlement. According to Lakota, the latter are not subject to disclosure. This court addressed aspects of this argument in *Dupuis*. In that case, a newspaper company sought a writ of mandamus to compel the City of Cincinnati to produce a copy of a proposed settlement agreement that it had received from the United States Department of Justice. The city argued that the document was exempt from disclosure on several grounds, among them that the federal Freedom of Information Act protected against disclosure. This court rejected the city's FOIA arguments, *id.* at ¶ 32, observing that "FOIA does not apply to nonfederal agencies or officers," and denied the writ.

{¶ 14} Lakota acknowledges *Dupuis*, but it says that the decision does not control. Rather, Lakota argues that the relevant precedent is *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 983 (6th Cir. 2003), which postdates *Dupuis*.[2] According to Lakota, the rule announced in *Goodyear*, which we recount below, created federal law within the meaning of R.C. 149.43(A)(1)(v), which provides, "Records the release of which is prohibited by…federal law" are not public records. Lakota thus says that federal law—by way of *Goodyear*—

---

2. Amici curiae echo Lakota's argument. But they make an additional argument that Lakota does not make. They say that the demand letter should be protected from disclosure based on the interplay between the Public Records Act and the Open Meetings Act, R.C. 121.22. We do not address the effect of the Open Meetings Act "given the general rule that an amicus curiae may not raise an issue not raised by the parties." *State ex rel. Grendell v. Walder*, 2022-Ohio-204, ¶ 31, fn. 1.

protects the demand letter against disclosure. As the proponent of this exception, Lakota must show that the demand letter "falls squarely within [it]." *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 2008-Ohio-1770, paragraph two of the syllabus.

**{¶ 15}** In *Goodyear*, the court of appeals crafted a "settlement privilege," holding that statements made in furtherance of settlement are privileged and protected from third-party discovery. *Id.* at 979. As authority to craft this privilege, the court quoted Fed.R.Evid. 501, which "authorizes federal courts to define new privileges by interpreting common law principles…'in the light of reason and experience,' " *Jaffee v. Redmond*, 518 U.S. 1, 8 (1996). As support for the existence of this privilege, the court of appeals pointed to the strong public interest favoring the secrecy of information exchanged during settlement negotiations and this country's tradition of protecting settlement communications. *Goodyear* at 980.

**{¶ 16}** Lakota's reliance on *Goodyear* fails. First, *Goodyear* crafted the settlement privilege to resolve a *discovery* dispute. Because this case does not involve a discovery dispute, *Goodyear* does not apply. *Accord Michigan Rising Action v. Secy. of State*, 2022 WL 2902080, *3 (Mich.App. July 21, 2022) (drawing a similar distinction in rejecting a public office's reliance on *Goodyear* within the context of Michigan's FOIA). Second, even if this case presented a question concerning proper discovery procedure, *Goodyear* would still not help Lakota for all the reasons set forth in *Consumers' Counsel v. Pub. Util. Comm.*, 2006-Ohio-5789, ¶ 90-91 (characterizing *Goodyear* as an outlier and observing that it should have turned on the state's law of privilege). We reject Lakota's argument that federal law authorizes it to withhold the demand letter.

**{¶ 17}** As an alternative to its argument that it could withhold the demand letter based on *Goodyear*, Lakota argues that Wells's request for the demand letter fails because she alleged in her complaint that the demand letter was sent to Conover, but in fact it was not. Rather, the letter was sent to a different attorney.

The problem with this argument is that Wells did not limit her request to letters addressed to Conover; rather, in her January 5 follow-up email, she asked for, among other things, communications between Tuck and counsel for the board. The demand letter filed under seal fits this description.

{¶ 18} In sum, we grant a writ of mandamus ordering Lakota to produce the demand letter.

### 2. The legal invoices

{¶ 19} Wells argues that the court should grant a writ of mandamus ordering Lakota to produce copies of invoices that display nonprivileged information. She claims that she is entitled to this relief because, she says, the invoices that Lakota produced to her "remain[] unlawfully redacted." Lakota counters that Wells's request for the writ is moot because the invoices that it produced in September 2023 had only the narrative portions redacted, which Ohio law authorizes. Lakota is correct.

{¶ 20} "Under existing caselaw, an invoice for a legal service provided to a public-office client is a public record, with the caveat that the narrative portion of the invoice describing the service is protected from disclosure by the attorney-client privilege." *State ex rel. Ames v. Baker, Dublikar, Beck, Wiley & Mathews*, 2022-Ohio-3990, ¶ 15 ("*Ames I*") (collecting cases). To determine whether a public office properly redacted portions of a legal invoice, the court reviews the unredacted invoice in camera. *State ex rel Ames v. Baker, Dublikar, Beck, Wiley & Mathews*, 2023-Ohio-2668, ¶ 6 ("We have reviewed the unredacted invoices and find. . . that the redactions extend no further than the narrative portions of each invoice. . . . .").

{¶ 21} We have reviewed the unredacted legal invoices that Lakota submitted under seal and compared them with the invoices that Lakota produced in September 2023. Based upon our review, we conclude that Wells's mandamus claim seeking the production of unredacted or lesser-redacted invoices is moot

because the redactions appearing on the September 2023 production extend no further than the narrative portions of each invoice that describe the service rendered and the bank-account-related information, the latter of which has not been placed at issue. *See State ex rel. Martin v. Greene*, 2019-Ohio-1827, ¶ 7 ("In general, a public-records mandamus case becomes moot when the public office provides the requested records.").

### C. Statutory damages

**{¶ 22}** Wells claims that she is entitled to statutory damages based on Lakota's decision to withhold the demand letter and produce redacted legal invoices. She is correct.

**{¶ 23}** "R.C. 149.43(C)(2) provides that a requester who transmits a public-records request by electronic submission, as [Wells] did, in a manner that fairly describes the requested records, shall be entitled to statutory damages if a court determines that the public office failed to comply with an obligation of R.C. 149.43(B). Statutory damages accrue at the rate of $100 for each business day the office failed to meet one of R.C. 149.43(B)'s obligations, beginning on the day the requester files a mandamus action, up to $1,000. R.C. 149.43(C)(2)." *State ex rel. Horton v. Kilbane*, 2022-Ohio-205, ¶ 15.

**{¶ 24}** Wells asserts that Lakota failed in its obligation to "make copies of the requested public record[s] available" either at all or "within a reasonable period of time." R.C. 149.43(B)(1). Lakota asks the court to not award any damages, citing R.C. 149.43(C)(2)(a) and (b).

**{¶ 25}** For the statute to apply, the court must determine that

> (1) based on the law as it existed at the time of the request, a well-informed person responsible for the records reasonably would have believed that R.C. 149.43(B) did not require their disclosure and (2) a well-informed person responsible for the records reasonably

would have believed that withholding the records would serve the public policy that underlies the authority asserted for withholding the records.

*State ex rel. Harm Reduction Ohio v. OneOhio Recovery Found.*, 2023-Ohio-1547, ¶ 38 (paraphrasing the statute). When both elements are met, a court may "reduce" or "not award statutory damages." R.C. 149.43(C)(2).

### 1. The demand letter

{¶ 26} The sole decision that Lakota has pointed to as authority for withholding the demand letter is *Goodyear*, 332 F.3d 976. As explained, that decision does not speak to the question presented here, and this court has previously declined to adopt its reasoning in a different context. What is more, this court's precedent holds that a settlement agreement involving a public office is a public record. *See, e.g.*, *Findlay*, 80 Ohio St.3d at 136. With this precedent on the books at the time of Wells's request, we fail to see how a well-informed custodian would reasonably believe that a communication made in furtherance of settlement could be withheld. We award $1,000 in statutory damages due to Lakota's failure to produce the demand letter.

### 2. The legal invoices

{¶ 27} Although Well's mandamus claim regarding the legal invoices is moot, her statutory-damages claim is not. *See Martin*, 2019-Ohio-1827, at ¶ 8. Here, over eight months elapsed between the time that Wells submitted her request and the time that Lakota sent her the properly redacted invoices. Given clear law on redacting attorney invoices at the time of Wells's request, *see, e.g.*, *Ames I*, 2022-Ohio-3990, at ¶ 15, no well-informed custodian would have reasonably believed, as Lakota did when it first responded to Wells, that it could have redacted the names of the attorneys providing the services, the hours spent to provide the

service, and the attorneys' rates.  We accordingly award $1,000 in statutory damages to Wells for Lakota's delay in producing the legal invoices to her.

*D.  Attorney fees*

**{¶ 28}** Wells asks for attorney fees under two provisions of the Public Records Act.  The first permits a court to award attorney fees when it grants a writ of mandamus ordering a public office to comply with R.C. 149.43(B).  R.C. 149.43(C)(3)(b).  The second permits a court to award attorney fees when it determines that the public office "responsible for the public records acted in bad faith when [it] voluntarily made the public records available to the relator for the first time after the relator commenced the mandamus action, but before the court issued any order concluding whether or not the public office . . . was required to comply with" R.C. 149.43(B).  R.C. 149.43(C)(3)(b)(iii).

### 1.  The demand letter

**{¶ 29}** Because Lakota has yet to voluntarily produce the demand letter, Wells cannot rely on R.C. 149.43(C)(3)(b)(iii)'s bad-faith language as the basis for her attorney-fee request.  Instead, she must proceed under R.C. 149.43(C)(3)(b).

**{¶ 30}** Because we are granting a writ of mandamus ordering production of the demand letter, Wells is eligible for attorney fees subject to R.C. 149.43(C)(3)(c)(i) and (ii), which, if met, empower a court to "not award" attorney fees.  R.C. 149.43(C)(3)(c).  Subdivisions (i) and (ii) set forth the "same" standard recited above with respect to the procedure a court must follow in determining whether to reduce or not award statutory damages.  *See Harm Reduction*, 2023-Ohio-1547, at ¶ 40.

**{¶ 31}** We have already rejected Lakota's argument that it should not have to pay statutory damages, noting that Lakota cannot shield itself from damages based on *Goodyear*, 332 F.3d 976.  We follow that approach here, concluding that Wells is entitled to attorney fees based on Lakota's refusal to produce the demand letter.  The amount of attorney fees will be determined at a later date, subject to the

filing of an itemized fee application by Wells that conforms to the proper standards. *See, e.g.*, *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 2018-Ohio-5111, ¶ 37-39 (determining that the relator is entitled to attorney fees, authorizing the relator to file an itemized fee application, and specifying the standards the court must apply in determining a proper fee award).

### 2. The legal invoices

{¶ 32} Because Lakota has produced the legal invoices with proper redactions, no writ of mandamus will issue for this request. Wells thus cannot rely on R.C. 149.43(C)(3)(b) as the basis for her attorney-fee request. Instead, we consider the R.C. 149.43(C)(3)(b)(iii) bad-faith provision.

{¶ 33} We have said:

> "The term 'bad faith' generally implies something more than bad judgment or negligence." *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 81, quoting *State v. Tate*, 5th Dist. Fairfield No. 07 CA 55, 2008-Ohio-3759, 2008 WL 2896658, ¶ 13. Bad faith "imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." *Id.*

(Cleaned up.) *State ex rel. McDougald v. Greene*, 2020-Ohio-3686, ¶ 26.

{¶ 34} Wells claims that Lakota engaged in bad faith by redacting portions of the legal invoices that never should have been redacted. Wells posits that Lakota redacted unprotected portions of the invoices because she was "critical of [the board's] investigation into allegations involving Miller."

{¶ 35} It is true that the caselaw was clear at the time of Wells's request that Lakota could redact the narrative portion of the invoice but not more. *See, e.g.*,

12

*Ames I*, 2022-Ohio-3990, at ¶ 15. And it is dismaying that Lakota took eight months to bring its production into compliance with the caselaw by removing the redactions that it had previously applied to the time, attorney name, and rate information.

**{¶ 36}** Even so, Wells cites no evidence for her assertion that Lakota's conduct was prompted by her critique of its investigation, and this court "cannot assign bad faith based on [Wells's] speculation." *State ex rel. Horton v. Kilbane*, 2022-Ohio-205, ¶ 36. Moreover, although Lakota plainly exercised bad judgment in its handling of the legal invoices, bad judgment is not equivalent to bad faith. *Id.* at ¶ 34.

**{¶ 37}** We deny Wells's request for attorney fees in connection with the legal invoices.

### E. Costs

**{¶ 38}** Wells asks for court costs. Under the Public Records Act, if the court grants a writ of mandamus ordering the public office to comply with R.C. 149.43(B), then it shall determine and award to the relator all court costs. R.C. 149.43(C)(3)(a)(i). Because we are granting a writ of mandamus as to the demand letter, we award Wells her court costs. *See Myers v. Meyers*, 2022-Ohio-1915, ¶ 77 ("Because we are granting a partial writ of mandamus, we award court costs to [relator]").

### III. CONCLUSION

**{¶ 39}** We deny Wells's motion for either oral argument or leave to file a supplemental brief, grant a writ of mandamus as to the demand letter and deny it as moot as to the legal invoices, award $2,000 in statutory damages, award attorney fees as to the demand letter subject to the filing of an itemized fee application, deny attorney fees as to the legal invoices, and award court costs. Wells's application for attorney fees shall be filed within 20 days of the date of today's decision.

Writ granted in part

and denied as moot in part.

_____

Barron, Peck, Bennie & Schlemmer, Co., L.P.A., Matt Miller-Novak, and Steven C. Davis, for relator.

McCaslin, Imbus & McCaslin, Ian R. Smith, and R Gary Winters; Bricker Graydon, and Brodi Conover, for respondents.

Pepple & Waggoner, Ltd., Christian M. Williams, and Daniel L. Lautar, for amici curiae, Ohio School Boards Association, Ohio Association of School Business Officials, and Buckeye Association of School Administrators, in support of respondents.

_____