**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Castellon v. Maloney*, Slip Opinion No. 2025-Ohio-4687.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-4687

THE STATE EX REL. CASTELLON *v.* MALONEY ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Castellon v. Maloney*, Slip Opinion No. 2025-Ohio-4687.]**

*Mandamus—Public-records requests—Relator failed to submit clear and convincing evidence establishing existence of a chain-of-custody record more extensive than the one already produced or of police department's ability or duty to produce iPhone-data records in a human-readable format—Writ and relator's requests for statutory damages, court costs, and attorney's fees denied.*

(No. 2024-1068—Submitted April 1, 2025—Decided October 14, 2025.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, DETERS, HAWKINS, and SHANAHAN, JJ. BRUNNER, J., concurred in part and concurred in judgment only as to Part II(A)(1).

**Per Curiam.**

{¶ 1} In this original action, relator, Estephen Castellon, requests a writ of mandamus ordering respondents, Michael P. Maloney, Gerald Vogel, and the Westlake Police Department (collectively, "the police department"), to produce public records he requested. Castellon also requests statutory damages, court costs, and attorney's fees. Maloney is the law director of the City of Westlake, and Captain Vogel is the person who responded to Castellon's public-records request.

{¶ 2} After the police department filed an answer, we granted an alternative writ, setting a schedule for the submission of evidence and briefs. 2024-Ohio-4743. For the reasons explained below, we deny Castellon's mandamus claim and his requests for statutory damages, court costs, and attorney's fees.

## I. FACTS AND PROCEDURAL HISTORY

### A. Public-Records Request and Response

{¶ 3} In February 2024, Castellon emailed a public-records request to the Westlake Police Department. He requested "Westlake[']s chain of custody [for his iPhone, which had been seized during a criminal investigation]; all reports and notes; all communications with Cellebrite, BCI [Ohio's Bureau of Criminal Investigation] and FBI (emails or otherwise); [and] all physical copies of the iPhone data." Cellebrite is a company that makes mobile-phone forensics software used by law-enforcement agencies.

{¶ 4} Two business days later, Captain Vogel acknowledged that he had received the public-records request. Six business days after receiving the request, Vogel informed Castellon that no emails responsive to it existed. Vogel explained that any responsive emails that may have existed would have been purged in accordance with the city's records-retention schedule. Vogel further informed Castellon that the remaining requested records were contained in a 19.2-gigabyte file, which was too large to email. Vogel suggested that Castellon either email a

link to a file-share website or provide a flash drive or external hard drive so that Vogel could share electronic copies of the remaining records with him.

{¶ 5} Later that day, after business hours, Castellon emailed a link to a file-share website so that Captain Vogel could upload the 19.2-gigabyte file. The next day, Vogel replied that he had uploaded the 19.2-gigabyte digital-forensics case file to the file-share website. Although Vogel also noted that he had received an error message stating that the storage was full, Castellon responded that the files were in an unreadable format, and he provided a new link so that Vogel could re-upload the files.

{¶ 6} In an affidavit filed by the police department, Captain Vogel attests that he successfully uploaded the "complete, full and accurate 19.2GB of responsive documents" on March 12, 2024. On that date, Vogel also informed Castellon that the file could be opened with the "UFEDReader applica[ti]on" and he attached the chain-of-custody record as a separate file.

{¶ 7} Castellon did not mention the unreadable-format issue in the next email he sent to Captain Vogel. Instead, in subsequent emails, Castellon and Vogel discussed whether the chain-of-custody record that Vogel had sent was complete.

**B. This Mandamus Action**

{¶ 8} Castellon filed this mandamus action in July 2024. In his complaint, he specified that the public records still at issue are the chain-of-custody record and the "data extraction (dump)" for the iPhone that was seized. The police department timely filed an answer. In October 2024, we granted an alternative writ, setting a schedule for the submission of evidence and briefs, 2024-Ohio-4743, which both parties have now submitted.

{¶ 9} The police department has submitted an affidavit from Captain Vogel and an affidavit from a digital-forensics examiner employed by the police department. The police department has also submitted the chain-of-custody record that was provided to Castellon. Both affiants describe how the Westlake Police

Department received Castellon's iPhone from the Lakewood Police Department in connection with a rape investigation and what each of them did with the iPhone.

{¶ 10} The digital-forensics examiner also explains in his affidavit that the data he extracted from the iPhone was acquired as machine-coded data that is not readable by human beings. He attests that he used Cellebrite software to process the machine-coded data into a human-readable report, and he avers that both the machine-coded data and the human-readable report were provided to Castellon.

## II. ANALYSIS

### A. Writ of Mandamus

{¶ 11} "[U]pon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1).[1] A writ of mandamus is an appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act. *State ex rel. Wells v. Lakota Local Schools Bd. of Edn.*, 2024-Ohio-3316, ¶ 10; R.C. 149.43(C)(1)(b). To obtain the writ, "the requester must prove by clear and convincing evidence a clear legal right to the record and a corresponding clear legal duty on the part of the respondent to provide it." *State ex rel. Griffin v. Sehlmeyer*, 2021-Ohio-1419, ¶ 10.

### 1. Chain-of-custody record

{¶ 12} The parties agree that the record that was provided to Castellon in response to his request for "Westlake[']s chain of custody" consists of two rows of a spreadsheet. The first row contains headers such as the date and time the item was received, assigning agency, examiner, case number, and suspect. The second row provides the information specifically relating to the Westlake Police Department's chain of custody of Castellon's iPhone.

---

1. The General Assembly amended R.C. 149.43 in 2024 Sub.H.B. No. 265 with an effective date of April 9, 2025. This opinion applies the version of the statute enacted in 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).

{¶ 13} Castellon argues that the chain-of-custody record that the police department provided is not complete. As proof, Castellon has submitted two slides from the Westlake Police Department's 2022 annual report describing the standards used by the department when handling property and processing evidence. He also submitted blank generic examples of chain-of-custody forms, but he has not explained from where he obtained the blank forms.

{¶ 14} The police department asserts that it has provided the complete chain-of-custody record to Castellon. In particular, Captain Vogel attests that the police department produced the only spreadsheet row that is relevant to Castellon's criminal case, and he clarified that the rows that were not produced are not related to that case.

{¶ 15} In his reply brief, Castellon argues that a larger responsive chain-of-custody record must exist, noting the "elaborate sequence" of steps necessary to extract the iPhone data, as described in documents relating to his criminal case that he submitted as exhibits here. He also refers to articles that he submitted regarding chain-of-custody procedure and property-room practices.

{¶ 16} "A public office has no duty to furnish records that are not in its possession." *State ex rel. Culgan v. Jefferson Cty. Prosecutor*, 2024-Ohio-4715, ¶ 9. "A public office may establish by affidavit that all existing public records have been provided." *State ex rel. Frank v. Clermont Cty. Prosecutor*, 2021-Ohio-623, ¶ 15. "When a public office attests that it does not have responsive records, the relator in a public-records mandamus case bears the burden of proving by clear and convincing evidence that the requested records exist and are maintained by the public office." *Culgan* at ¶ 13.

{¶ 17} In this case, Captain Vogel's affidavit establishes that the complete chain-of-custody record responsive to Castellon's public-records request was produced. Although Castellon believes that a more extensive chain-of-custody record exists and has submitted evidence explaining that belief, a relator's "belief

that there are responsive documents is not sufficient evidence to establish that they exist," *id.* at ¶ 14. He has not submitted any evidence establishing by clear-and-convincing proof that additional responsive records exist. Therefore, Castellon is not entitled to a writ of mandamus as to his request for records showing the Westlake Police Department's chain of custody of his iPhone.

### 2. Data-extraction records

{¶ 18} Castellon also argues that he never received a readily accessible, human-readable version of the data that was extracted from his iPhone, asserting that he instead received illegible data. He requests a writ of mandamus ordering the police department to provide these records in a readily accessible format.

{¶ 19} The police department contends that the "illegible data" provided to Castellon is machine-coded data that requires specialized hardware and software to read. This assertion is supported by the affidavit from the digital-forensics examiner for the Westlake Police Department. The police department argues that the proprietary software needed to read the data is not a public record and that the department is not required to provide Castellon with the software. According to the police department, it has provided him with "the record it ha[s] as it relates to the phone."

{¶ 20} In his reply brief, Castellon emphasizes that the iPhone data was not sent in a human-readable format; he argues that the format in which the police acquired the data was as the physical iPhone. Castellon contends that the police department's argument that proprietary software is needed to read the data is just an excuse for why the data that was provided to him is not readable.[2]

{¶ 21} In his affidavit, the digital-forensics examiner states that both the machine-coded data and the human-readable report were provided to Castellon.

---

2. Castellon also accuses the police department of lying, either in this case or in his criminal proceeding, noting inconsistencies that he perceives. However, the evidence from his criminal trial is not at issue in this case.

However, the examiner also suggests in his affidavit that the Cellebrite software must be used to read the human-readable report. Indeed, Captain Vogel asserted to Castellon after uploading the file that it could be opened with the UFEDReader application. Castellon has not submitted any evidence contradicting that assertion. Instead, Castellon appears not to understand that he must use particular software to read the human-readable record that was provided to him.

{¶ 22} The Public Records Act permits a requester to choose to have a public record

> duplicated upon paper, upon the same medium upon which the public office or person responsible for the public record keeps it, or upon any other medium upon which the public office or person responsible for the public record determines that it reasonably can be duplicated as an integral part of the normal operations of the public office or person responsible for the public record. When the requester makes a choice under this division, the public office or person responsible for the public record shall provide a copy of it in accordance with the choice made by the requester.

R.C. 149.43(B)(6).

{¶ 23} In his public-records request, Castellon did not ask that the iPhone-data records be provided to him in a particular format. Although he requested "all *physical* copies of the iPhone data" (emphasis added), it is unclear what he meant by "physical copies."

{¶ 24} When Captain Vogel informed Castellon that the requested iPhone-data records were contained in a 19.2-gigabyte file, Vogel provided him with the choice to have the file uploaded to a file-share website or copied onto a flash drive or external hard drive. Castellon chose to have the file uploaded to a file-share

website. After some technical difficulties, Vogel ultimately uploaded the file to the file-share website as requested. Castellon did not request that the police department print out all the requested records from the 19.2 gigabytes of data, nor does he argue that the police department was required to do so.

{¶ 25} In *State ex rel. Recodat Co. v. Buchanan,* we held that software required to access information stored on magnetic computer tapes was not a public record and did not have to be produced. 46 Ohio St.3d 163, 165 (1989). Although we later limited that holding "to the unique facts of that case," in doing so, we held that "proprietary software does not constitute a public record under R.C. 149.43, even if such software is necessary in order to read public information contained on computer tapes." *State ex rel. Margolius v. Cleveland*, 62 Ohio St.3d 456, 459 (1992). Similarly, here, the Public Records Act does not require the police department to provide Castellon with the proprietary software needed to read the iPhone data provided to him. Furthermore, public agencies are not required "to store records in a particular medium in order to provide greater public access to the records." *Id.* at 461.

{¶ 26} Ultimately, the police department provided Castellon with the existing iPhone-data records that are responsive to his public-records request in the format in which it keeps them. Castellon has not shown by clear and convincing evidence that the police department has the ability or the duty to produce the records in another format in response to his request. Therefore, he is not entitled to a writ of mandamus regarding the data that was extracted from his iPhone.

{¶ 27} In sum, Castellon has not shown that he is entitled to a writ of mandamus as to any of the items he asked for in his public-records request.

### B. Statutory Damages

{¶ 28} A public-records requester shall be entitled to statutory damages if (1) he transmitted a written public-records request by hand delivery, electronic submission, or certified mail, (2) he made the request to the public office or person

responsible for the requested records, (3) he fairly described the records sought, and (4) the public office failed to comply with an obligation under R.C. 149.43(B). R.C. 149.43(C)(2).

{¶ 29} As discussed above, Castellon has not shown that the police department failed to comply with any of its obligations under R.C. 149.43(B). Therefore, we deny his request for statutory damages.

### C. Court Costs and Attorney's Fees

{¶ 30} Although Castellon requested court costs and attorney's fees in his complaint, he does not explain in his briefs why he is entitled to either. Moreover, there are no court costs to award, because Castellon filed an affidavit of indigency. *State ex rel. Straughter v. Dept. of Rehab. & Corr.*, 2023-Ohio-1543, ¶ 16. Therefore, we deny his request for court costs.

{¶ 31} As for attorney's fees, Castellon is ineligible for fees because he represented himself in this action and thus did not incur any attorney's fees. *See State ex rel. Huth v. Animal Welfare League of Trumbull Cty., Inc.*, 2022-Ohio-3583, ¶ 18. Accordingly, we deny his request for attorney's fees.

### III. CONCLUSION

{¶ 32} For the foregoing reasons, we deny Castellon's request for a writ of mandamus and his requests for statutory damages, court costs, and attorney's fees.

Writ denied.

_____

Estephen Castellon, pro se.

Michael P. Maloney, Westlake Law Director, John J. Spellacy, Assistant Prosecuting Attorney, and Nathalie E. Supler, Assistant Law Director, for respondent.

_____