OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Whitten, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

The State of Ohio, Appellant, v. West, a.k.a. Weaver, Appellee.
[Cite as State v. West (1993),     Ohio St.3d    .]
Criminal law -- Trial court's order granting shock probation
     reinstated by Supreme Court using its equitable powers.
     (No. 92-719 -- Submitted March 17, 1993 -- Decided JUne
23, 1993.)
     Appeal from the Court of Appeals for Hamilton County, No.
C-910380.
     On January 9, 1990, appellee, Corliss West (a.k.a. Corliss
Weaver) entered a Kroger store in Cincinnati and asked to
purchase three $200 money orders from Jo Ann Mirischen, the
store's "front-end" manager.  Mirischen prepared and printed
the money orders.  After the orders were printed, appellee
requested to inspect them.  It appears that appellee eventually
placed the orders in her purse.  She then exited the store
without paying for the money orders.  Mirischen confronted
appellee and a "tug of war" over appellee's purse transpired.
During the struggle between Mirischen and appellee over the
purse, appellee warned that she had a gun.  According to
Mirischen, appellee pulled a gun from the purse, pointing it
directly at Mirischen.  Mirischen let go of the purse and
appellee fled across the store's parking lot.  Mirischen
testified that she was not knowledgeable about guns, but that
the gun pointed at her by appellee looked real.  Mirischen also
stated that the gun had a trigger, was black and that it was
very small.
     Mirischen further testified that she followed appellee at
what she perceived to be a safe distance.  Mirischen watched an
automobile pull up alongside appellee and appellee entered the
vehicle.  While this was occurring, Mirischen wrote the
automobile's license plate number on her hand.  Immediately
thereafter, the automobile, with appellee inside, doubled back
and approached Mirischen.  Mirischen stated that appellee was
sitting in the front passenger seat of the vehicle and
positioned between the driver and appellee was the gun.  The
driver informed Mirischen that appellee wanted to return the
money orders.  Mirischen was hesitant in retrieving the money
orders because of the gun.  However, the driver apprised

Mirischen that the gun was a "play gun." Mirischen reached across the driver's seat and appellee handed the money orders to her. Mirischen recalled that appellee was crying and that appellee said she was sorry.

On direct examination, the driver testified that the gun used by appellee was a water pistol and it was made out of rubber. Further, testimony indicated that the driver was not an accomplice to the wrongdoing by appellee. Rather, it appears that the driver was a neutral observer and he persuaded appellee to return the money orders to Mirischen.

On March 27, 1990, the Hamilton County Grand Jury returned a four-count indictment against appellee. Appellee was charged with one count of aggravated robbery with a gun specification, two counts of robbery and one count of theft. Appellee entered a plea of not guilty and she waived her right to a trial by jury. Following a bench trial on July 5, 1990, appellee was convicted and sentenced for aggravated robbery, robbery and theft. One count of robbery was dismissed prior to trial. Further, the trial court found appellee not guilty of the gun specification. The trial court found the driver of the automobile to be a credible witness and that the state failed to prove the circumstances with respect to the gun specification.

It appears that appellee appealed her convictions.[1] During the pendency of her appeal, counsel for appellee, on February 12, 1991, filed a motion for shock probation under R.C. 2947.061.

On February 28, 1991, the trial court granted appellee's motion for shock probation.[2] In its entry, the trial court stated that probation was to become effective upon appellee's completion of certain sentences for two crimes apparently unrelated to the incident which occurred at the Kroger store. The trial court also noted in its February 28, 1991 entry that the length of probation would be set by the court upon appellee's return to Hamilton County.

On April 16, 1991, the trial court, on its own motion, reconsidered its February 28, 1991 entry granting appellee shock probation. In its April 16, 1991 entry, the trial court set aside the February 28, 1991 entry. The trial court essentially concluded that it lacked authority to grant the relief sought by appellee because aggravated robbery, when committed with a firearm, is a nonprobationable offense.

On April 22, 1991, appellee filed a motion for relief from judgment. In her motion, appellee alleged that the trial court "was mistaken" that aggravated robbery is a nonprobationable offense in this case. This is so, urged appellee, because the trial court had specifically found that there was no evidence that the gun was operable. Appellee urged that the trial court was not precluded from granting probation since probation is prohibited only if the person charged was armed with a "firearm," as defined in R.C. 2923.11, which requires the state to prove the gun was operable. See R.C. 2951.02(F)(3).

On May 2, 1991, the trial court denied appellee's motion for relief from judgment. The trial court observed, in part, that:

"On February 12, 1990 [sic, 1991] a motion for shock probation was filed. This was granted by the Court on February

28, 1991, without objection by the state.  At the time of the defendant's appearance in Court, after being returned from state custody, the state objected to the previously entered order on the grounds that the Court did not have the power to grant probation because the defendant had been convicted of an offense while armed with a firearm.  Specifically, the Court had found that the state had failed to prove the firearm specification but found the defendant guilty of aggravated robbery, to wit:  theft while having a deadly weapon or dangerous ordinance [sic], a handgun, that was operable and on or about her person.  Because the defendant had been convicted of committing an offense while armed with a firearm, the Court reversed its previous order granting shock probation, thereby agreeing that the offense was non-probational [sic] on the ground proffered by the state * * *.

"In the case at bar, this Court had authority to set aside the granting of shock probation because this Court found that it did not have power under R.C. 2951.02(F) and 2947.061(B) to grant the motion because defendant was found guilty of having a firearm while perpetrating a theft.  Thus, this Court's decision 'reconsidering' the granting of shock probation was one this Court was required to make as it determined that it had no authority to grant shock probation."

On May 15, 1991, appellee filed a notice of appeal from the trial court's April 16, 1991 entry denying shock probation.  The court of appeals, on February 19, 1992, concluded that the trial court erred in setting aside its February 28, 1991 entry.  In determining that the trial court's original entry granting shock probation was not void ab initio, as concluded by the trial court, the court of appeals reinstated the February 28, 1991 entry granting appellee shock probation.

This cause is now before this court pursuant to the allowance of a motion for leave to appeal.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Christian J. Schaefer, Assistant Prosecuting Attorney, for appellant.

Hal R. Arenstein and Timothy A. Smith, for appellee.

Douglas, J.   A review of the history of this case unearths a procedural morass.  As we delve into the ultimate conclusions reached by the trial court and court of appeals, and consider the arguments posed by the parties, we uncover an almost endless array of issues.  Thus, we raise, without deciding, the following questions:  (1)  Is the granting of shock probation an appealable order and, if so, should the state have filed a notice of appeal from the trial court's February 28, 1991 entry?  (2) Is the denial (revocation) of shock probation an appealable order?  (3) Did appellee have a right to file a notice of appeal from the trial court's April 16, 1991 entry denying (revoking) shock probation?  (4) Did the court of appeals have jurisdiction to hear appellee's May 15, 1991 appeal?  (5) Did the trial court have jurisdiction (authority) to reconsider its February 28, 1991 entry?  (6) Does it matter if the February 28, 1991 order is void or merely voidable?  (7) How do the sections on probation (R.C. Chapter

2951) and shock probation (R.C. 2947.061) relate or interrelate? (8) Was the original conviction for aggravated robbery under the facts of this case a proper conviction?

These and a number of other questions arise and we now find ourselves in much the same position as the court of appeals on appeal and the trial court on reconsideration found themselves. Because these questions have not been directly raised, briefed or argued before us, we decline to answer the questions even though answering them might very well lead us to a different conclusion. In deciding as we do we, specifically, are not approving the procedures followed at the trial and appellate court levels.

Accordingly, and solely using our equitable powers, we affirm the judgment of the court of appeals and reinstate the trial court's order of February 28, 1991, granting shock probation to appellee.

Judgment affirmed.

A.W. Sweeney, Resnick and F.E. Sweeney, JJ., concur.
Moyer, C.J., and Wright, J., concurs in judgment only.
Pfeifer, J., dissents.

FOOTNOTES:
1    On May 24, 1991, the court of appeals reversed appellee's conviction and sentence for theft but affirmed the trial court's holding in all other respects. The court of appeals concluded that the theft offense was an allied offense of similar import to the aggravated robbery and robbery charges.
2    It appears from the trial court's May 2, 1991 entry that a hearing was conducted after the trial court granted appellee's motion for shock probation.

Moyer, C.J., concurring in judgment only.    As stated by the majority, this appeal does present a number of justiciable legal issues for the court to decide. However, the majority bypasses these legal issues and decides the case on "equity." Ohio judges derive their authority to grant probation from statutory law alone. Courts, particularly appellate courts, have no constitutional or "equitable" power to free people convicted of crimes. Because the majority bases its judgment on what it calls its "equitable powers," rather than on the law, I cannot join its opinion.

I

In the nineteenth century there was some debate over whether American trial courts had power deriving from the common law to indefinitely suspend criminal sentences. See Carter, Glaser & Wilkins, Probation, Parole, and Community Corrections (3 Ed. 1984) 5-6. In England, the practice of judicial suspension of punishment had been necessary, in part, because "under common law at that time, a convicted offender had no right to appeal the verdict and no right to a new trial." Id. at 4. English judges used their power simply to prevent the injustices which were caused by an inflexible system of criminal justice. Id.

In 1916, however, the United States Supreme Court held that our federal courts could not indefinitely suspend a criminal sentence without legislative authority. Ex parte United States (1916), 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129. The court reasoned that such a remedy "is inconsistent with the

Constitution, since its exercise in the very nature of things amounts to a refusal by the judicial power to perform a duty resting upon it and, as a consequence thereof, to an interference with both the legislative and executive authority as fixed by the Constitution."  Id. at 51-52, 37 S.Ct. at 78, 61 L.Ed. at 145.  This follows from our system of separated powers:  the legislature makes the law, the courts interpret and apply the law, and the executive enforces the law.  Under the Constitution, courts cannot interfere with the terms of punishment as set by the legislature or the executive's duty to enforce those terms without positive legal authority to do so.

In 1933 this court expressly followed the federal lead.  In Toledo Mun. Court v. State ex rel. Platter (1933), 126 Ohio St. 103, 184 N.E. 1, paragraph three of the syllabus, we held that "[t]he trial courts of this state do not have the inherent power to suspend execution of a sentence in a criminal case and may order such suspension only as authorized by statute."  See, also, State v. Smith (1989), 42 Ohio St.3d 60, 537 N.E.2d 198, paragraph one of the syllabus.

If the trial courts do not have inherent equitable power to grant probation, neither does this court.  Quite simply, if this court uses "equitable powers" to affirm the granting of probation, our interference with legislative and executive authority is just as unconstitutional as if a trial court used such power to grant probation in the first place.

Moreover, the nature of "equity" jurisdiction argues against an appellate court using its power the way the majority does in this case.  Decisions requiring equitable balancing should not be based solely on the cold appellate record.  Trial judges are far more able than appellate courts to fairly balance equities.  That, of course, is why we generally use an "abuse of discretion" standard in reviewing decisions on equitable claims and defenses in the trial courts.  See, e.g., Joseph J. Freed & Assoc., Inc. v. Cassinelli Apparel Corp. (1986), 23 Ohio St.3d 94, 23 OBR 255, 491 N.E.2d 1109.  While we are able to judge whether a trial court abused its discretion in making an equitable judgment, we are not in place to make those judgments ourselves.

We are simply not a court of equity; the constitutional role of this court -- its raison d'etre -- is to interpret and apply the law.  Frankly, the notion that we should stand at the gates of the penitentiary deciding who deserves probation and who deserves prison time should make us all more than a little uneasy.

In my opinion it is essential that judges follow articulated standards when a person's liberty is a stake.  Due process requires no less.  It is only through the use of such standards that we can ensure every person equal treatment under the law.  Every school child learns the maxim that our government is a government of laws, not of people.  Today's decision ignores that simple principle.

II

In its decision, the court of appeals considered and resolved three dispositive issues.  The court first decided that, after acquitting West of the firearm specification, the trial court "could not then punish her as if the specification had been proven."  This led the court to consider whether

aggravated robbery, without the firearm specification, is a probationable offense.  It concluded that it can be, because the toy gun was not a "firearm" for purposes of the probation statute.1

Finally, the court considered whether the trial court had "jurisdiction" to reconsider its order granting shock probation and to reverse itself.  The court held that while trial courts do have jurisdiction to reconsider earlier judgments on the ground that they were void ab initio, the trial court in this case erred in reversing itself, because its earlier judgment was valid.

I would have dismissed this appeal as improvidently allowed.  As that was not done, I agree in general with the appellate court's legal analysis and would affirm its judgment.

Wright, J., concurs in the foregoing opinion.

FOOTNOTE:
1  R.C. 2951.02 provides in pertinent part:

"(F) An offender shall not be placed on probation, and shall not otherwise have his sentence of imprisonment suspended pursuant to division (D)(2) or (4) of section 2929.51 of the Revised Code when any of the following applies:

"***

"(3) The offense involved was not a violation of section 2923.12 of the Revised Code and was committed while the offender was armed with a firearm or dangerous ordnance, as defined in section 2923.11 of the Revised Code."

R.C. 2923.11(B)(1) provides:

"'Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm which is inoperable but which can readily be rendered operable."