**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Prows v. Ohio Legislative Serv. Comm.*, Slip Opinion No. 2026-Ohio-149.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-149

THE STATE EX REL. PROWS *v.* OHIO LEGISLATIVE SERVICE COMMISSION.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Prows v. Ohio Legislative Serv. Comm.*, Slip Opinion No. 2026-Ohio-149.]**

*Mandamus—Public-records requests—R.C. 101.30 does not violate Article II, Section 13 of Ohio Constitution—Relator failed to establish clear legal right to receive the records he requested because they are not public records for purposes of Public Records Act—Writ denied.*

(No. 2025-0415—Submitted September 16, 2025—Decided January 21, 2026.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ.

**Per Curiam.**

{¶ 1} Relator, Tate D. Prows, an Oxford, Ohio, resident, submitted a public-records request to respondent, the Ohio Legislative Service Commission ("OLSC"), seeking records related to the drafting of Senate Bill 104 ("S.B. 104"). The bill, which has been referred to a Senate committee, pertains to local regulation and taxation of short-term rental properties. OLSC provided some records but denied Prows's request in part, citing R.C. 101.30, which exempts a "legislative document" from the definition of "public record" under R.C. 149.43, Ohio's Public Records Act. Prows now seeks a writ of mandamus compelling OLSC to produce the withheld records related to S.B. 104 because, according to Prows, R.C. 101.30 is unconstitutional.

{¶ 2} We deny Prows's request for mandamus relief. Prows has not shown that R.C. 101.30 is unconstitutional and he fails to argue that R.C. 101.30 does not cover the legislative documents that OLSC withheld. Thus, the records Prows seeks are not public records under the Public Records Act, and therefore he failed to carry his burden of establishing a clear legal right to the records he seeks.

## I. FACTS AND PROCEDURAL HISTORY

### A. Evidentiary dispute

{¶ 3} Prows did not submit evidence. However, he did submit seven unauthenticated exhibits in a document styled "Appendix to Relator's Merit Brief." As an initial matter, OLSC disputes the "legitimacy, authenticity, and admissibility" of those seven exhibits and asserts that we should "refuse to consider" them. Most notably, OLSC submitted an affidavit attesting that Prows's Exhibits A and B, which Prows characterizes as his March 5, 2025 public-records request to OLSC and OLSC's response, respectively, do not reflect the request that OLSC in fact received from Prows or the response that it provided him. OLSC did not move to strike the exhibits. *See* S.Ct.Prac.R. 4.01(A)(1) ("Unless otherwise

addressed by these rules, an application for an order or other relief shall be made by filing a motion for the order or relief.").

{¶ 4} Prows concedes in his reply brief that Exhibits A and B were "compiled in error" and disavows reliance on any exhibit other than Exhibits E and F. Prows's Exhibits E and F purport to be emails he sent to Oxford officials questioning the legality of Oxford's taxation of short-term rental properties. Although OLSC is correct that these exhibits are unauthenticated, we need not decide whether they are proper evidence, because they are irrelevant to the issues in this case. Consequently, the following statement of facts is taken exclusively from evidence submitted by OLSC, which Prows does not dispute.

**B. Prows's public-records request**

{¶ 5} On March 5, 2025, Prows sent a public-records request to OLSC regarding S.B. 104.[1] In his request, Prows sought three categories of records, paraphrased below:

1. All communications regarding S.B. 104 between certain OLSC attorneys and (a) municipal governments in Ohio (including government officials and their counsel) or (b) the Ohio Municipal League;

2. Any legal analyses, reports, draft legislation, or other materials authored or reviewed by certain OLSC attorneys concerning the anticipated effect of S.B. 104 on the taxation of short-term rental properties; and

3. Any records reflecting meetings or discussions between certain OLSC attorneys and "municipal officials, lobbyists, or third-party stakeholders" about the taxation provisions of S.B. 104.

---

1. Although Prows's petition refers to a public-records request made on March 2, 2025, and OLSC's evidence notes three separate requests made between March 2 and 5, the parties' briefing centers on Prows's third request, which was made on March 5, 2025. Additionally, Prows does not dispute OLSC's assertion that Prows "abandoned any claims with respect to his other requests." We therefore consider only Prows's March 5 request.

**C. OLSC's response**

{¶ 6} Megan Cummiskey, OLSC's assistant director for its Office of Research and Drafting, acknowledged OLSC's receipt of Prows's request on the day Prows sent it. On March 10, 2025, Cummiskey explained to Prows by email that R.C. 101.30 "establishes a confidential relationship between members of the General Assembly, members of General Assembly staff, and legislative staff" and that "documents arising from this confidential relationship, including drafting materials, are not public records for the purpose of the Public Records Law." Cummiskey further explained that a nonpublic document becomes public when a member of the General Assembly "releases it to the public or authorizes its release" and that OLSC will provide such a document to the public if OLSC has "direct knowledge" that the document has been published.

{¶ 7} Cummiskey's email attached six records responsive to Prows's request: (1) OLSC's undated bill analysis for S.B. 104 as introduced, (2) a March 5, 2025 Fiscal Note & Local Impact Statement for S.B. 104, (3) a February 25, 2025 bill analysis for S.B. 104, (4) the text of S.B. 104 as introduced, (5) an excerpt from a draft bill analysis showing revisions made by an OLSC attorney, and (6) a February 24, 2025 email exchange between two OLSC attorneys about a review of the draft bill analysis.

{¶ 8} Cummiskey's March 10 response to Prows told him that the documents she was forwarding to him constituted all public records responsive to Prows's request, while clarifying that some records were being withheld under R.C. 101.30. Those withheld records included "emails of General Assembly members or staff and [OLSC] staff; draft bills or proposed language; and memoranda analyzing taxation of short-term rental properties," as well as "related research requests from General Assembly members or staff to [OLSC] staff." In her affidavit, Cummiskey attests that "[n]o member of the General Assembly or General Assembly staff authorized [OLSC] to release the withheld records."

Cummiskey further attests that "[n]one of the withheld records were communications between 'City of Oxford policy makers' . . . and General Assembly members or [OLSC] staff."

## D. Procedural background

{¶ 9} Prows filed this action on March 21, 2025. In his petition, Prows seeks a "writ of mandamus compelling [OLSC] to provide the requested legislative records related to S.B. 104" and a declaration that any R.C. 101.30 exemption relied on by OLSC is "unconstitutional as applied to legislative records." Prows asserts that R.C. 101.30 is not a "legally valid exemption," because it "conflicts with" the Public Records Act and Article II, Section 13 of the Ohio Constitution, which states that "[t]he proceedings of both houses [of the General Assembly] shall be public, except in cases which, in the opinion of two-thirds of those present, require secrecy." Prows does not seek an award of statutory damages.

{¶ 10} OLSC filed an answer on April 14, acknowledging that Prows made multiple public-records requests and that OLSC responded by providing certain records and withholding other records under R.C. 101.30. OLSC denied that R.C. 101.30 is unconstitutional and denied that it withheld any records not exempt from disclosure under R.C. 101.30.

{¶ 11} On May 28, we granted an alternative writ, setting a schedule for the submission of briefs and evidence. 2025-Ohio-1876. Both parties submitted merit briefs, OLSC submitted evidence, and Prows filed a reply brief.

## II. ANALYSIS

{¶ 12} A writ of mandamus is an appropriate remedy to compel compliance with the Public Records Act, R.C. 149.43. *State ex rel. Wells v. Lakota Local Schools Bd. of Edn.*, 2024-Ohio-3316, ¶ 11; R.C. 149.43(C)(1)(b). This is so even when the right of access to public records is predicated on a constitutional challenge. *See State ex rel. Cincinnati Enquirer v. Winkler*, 2004-Ohio-1581, ¶ 4. To obtain the writ, "the requester must prove by clear and convincing evidence a

clear legal right to the record and a corresponding clear legal duty on the part of the respondent to provide it." *State ex rel. Griffin v. Sehlmeyer*, 2021-Ohio-1419, ¶ 10.

## A. The Public Records Act and R.C. 101.30

{¶ 13} Ohio has long recognized that the public's access to governmental records is critical to "ensuring [the government's] accountability, integrity, and equity while minimizing sovereign mischief and malfeasance." *Kish v. Akron*, 2006-Ohio-1244, ¶ 16. The General Assembly codified the public's right to access certain governmental records through passage of the Public Records Act, which "reinforce[s] the understanding that open access to government papers is an integral entitlement of the people." *Id.* at ¶ 17. But the right of access to governmental records enshrined in the Public Records Act is not boundless, and "not every record produced or kept by a public office is a 'public record' falling within the scope of the [Public Records Act]." *State ex rel. Dann v. Taft*, 2006-Ohio-1825, ¶ 21.

{¶ 14} Here, OLSC relied on R.C. 101.30 to withhold certain records that were otherwise responsive to Prows's request. R.C. 101.30(B)(1) obliges "[l]egislative staff" to maintain a "confidential relationship" with respect to communications between legislative staff and members of the General Assembly or General Assembly staff. And, critically, R.C. 101.30(B)(1) and (2) explicitly exempt "legislative document[s] arising out of this confidential relationship" from the definition of "public record" for purposes of the Public Records Act. *Id.*; *see also Dann* at ¶ 50 (noting that R.C. 101.30(B) reflects the General Assembly's recognition of the "necessity of limited confidentiality" for "certain internal communications in the legislative . . . branch[]").

{¶ 15} R.C. 101.30 defines "[l]egislative document" to include documents "in whatever form or format prepared by legislative staff for a member of the general assembly or for general assembly staff," R.C. 101.30(A)(1)(a), including (1) work product, correspondence, analysis, opinions, and memoranda, (2) documents and material that request or provide information or materials to assist

in the preparation of the above-listed documents, and (3) any summary of a bill, resolution, or amendment if that summary is prepared before the bill, resolution, or amendment is filed for introduction or presented at a committee hearing or floor session.  R.C. 101.30(A)(1)(a) through (c).

### B.  Prows has not established that R.C. 101.30 is unconstitutional

{¶ 16} Prows does not argue that the records fall outside R.C. 101.30's scope—i.e., he concedes that the statute covers the records that OLSC withheld. Instead, he asserts that regardless of R.C. 101.30's applicability to the particular records sought, OLSC cannot rely on the statute because it "[v]iolates Article II, Section 13 of the Ohio Constitution."

{¶ 17} Prows asserts that R.C. 101.30 violates the "express constitutional limit" imposed on the legislature by Article II, Section 13, which he interprets to mean that two-thirds of the legislature must vote to make a document private before the document can be withheld from the public.  R.C. 101.30, he observes, does not require a two-thirds-majority vote for legislative documents to be withheld and thus, he argues, it is incompatible with the constitutional provision.  This argument fails, however, because it stretches the constitutional text well beyond its plain meaning.

{¶ 18} "In determining whether a statute and a constitutional provision are clearly incompatible, we use the plain and ordinary meaning of the words in question and attempt to reconcile the words of the statute with the terms of the constitution whenever possible."  *State v. Carswell*, 2007-Ohio-3723, ¶ 10, citing *State ex rel. Lake Cty. Bd. of Commrs. v. Zupancic*, 62 Ohio St.3d 297, 300 (1991); s*ee also Toledo City School Dist. Bd. of Edn. v. State Bd. of Edn.*, 2016-Ohio-2806, ¶ 16, quoting *State ex rel Maurer v. Sheward*, 1994-Ohio-496, ¶ 24 (plurality opinion) ("'Where the meaning of a [constitutional] provision is clear on its face, [the court] will not look beyond the provision in an attempt to divine what the drafters intended it to mean.'").

**{¶ 19}** The language of Article II, Section 13 of the Ohio Constitution plainly applies to the "proceedings" of the General Assembly only. And, when afforded its plain and ordinary meaning, "proceedings" refers to the events of a session, meeting, or hearing of a particular body. *See Webster's Third New International Dictionary* (2002) (defining "proceedings" as "an official record or account (as in a book of minutes) of things said or done (as at a meeting or convention of a society)").[2] In other words, this provision assures public access to the business transacted during the sessions of the General Assembly.

**{¶ 20}** This reading mirrors the use of "proceedings" elsewhere in the Ohio Constitution and in Ohio law. *See* Ohio Const., art. II, § 9 ("Each House shall keep a correct journal of its proceedings, which shall be published."); R.C. 101.54 ("The clerk of the senate and the clerk of the house of representatives shall keep a daily journal of the proceedings of the clerk's house of the general assembly, which shall be read and corrected in the clerk's presence."); *Wichterman v. Brown*, 170 Ohio St. 25, 28 (1959) (noting that statutes requiring publication of the "daily journal of the proceedings of [each] house" were intended to "insure a complete . . . record of the *proceedings of the General Assembly* so as to advise the members . . . as to what transpired *during the sessions of those bodies*. . . ." [Emphasis added.]).

**{¶ 21}** Prows advances a much broader definition of "proceedings." He argues that at the framing, "proceedings" was understood to encompass the entirety of the legislative process, including "committee work, drafting, deliberation, and debate"—the implication being that a "[l]egislative document" under R.C. 101.30(A)(1) must also fall within that broad understanding of "proceedings." Prows offers no citation to authority in support of this argument. Instead, he points

---

2. The heading of Article II, Section 13 of the Ohio Constitution—"Legislative sessions to be public; exceptions"—further supports the conclusion that "proceedings" refers to the "sessions" of the General Assembly, notwithstanding that the headings are editorial additions that "were never ratified by the people of Ohio and were added more than a century later," *State ex rel. Cincinnati Enquirer v. Bloom*, 2024-Ohio-5029, ¶ 35, fn.7.

to the "voluminous records" kept of the proceedings of the constitutional convention, which he says "detail delegate speeches, motions and votes, article-by-article drafting, committee reports, and discussions on open government," among other things. Even so, the fact that debates and materials at the constitutional convention were public does not reveal what the Ohio Constitution says about public access to the full legislative process of the General Assembly.

{¶ 22} Moreover, Prows's expansive interpretation cannot be squared with the text of Article II, Section 13 itself. Indeed, the requirement that "two-thirds of those present" vote to maintain the "secrecy" of the General Assembly's "proceedings" would be nonsensical when applied to the types of records Prows seeks here—namely, communications between legislative staff and individual members of the General Assembly or General Assembly staff.

{¶ 23} If R.C. 101.30 purported to shield legislative documents from public scrutiny without regard to their relation to the proceedings of the General Assembly, our holding might be a closer call. But it does not. R.C. 101.30(C) explicitly provides that a legislative document becomes a public record once it has been presented to the members of a house of the General Assembly, filed for introduction with the clerk of either house, presented at a committee hearing or floor session, or otherwise released to the public. In this way, R.C. 101.30 recognizes and comports with the constitutional requirement that the "proceedings" of the General Assembly remain public.

{¶ 24} Because R.C. 101.30 is compatible with Article II, Section 13 of the Ohio Constitution, the statute is not unconstitutional. *See Carswell*, 2007-Ohio-3723, ¶ 10, 37. And Prows explicitly declines to argue that R.C. 101.30 does not apply to the records withheld by OLSC. Thus, under R.C. 101.30, the records Prows seeks are not public records for purposes of the Public Records Act, and Prows has consequently failed to establish his "clear legal right" to receive them,

as is necessary for a writ of mandamus to issue. *See State ex rel. Griffin v. Sehlmeyer*, 2021-Ohio-1419, ¶ 10. We therefore deny the writ.

### C. Any remaining records

{¶ 25} Prows suggests in his merit brief that certain records not exempt under R.C. 101.30 might also have been withheld; for example, communications between state legislators or legislative staff and municipal government officials. Such a communication arguably would not constitute a "[l]egislative document" "arising out of [the] confidential relationship" between "member[s] of the general assembly or general assembly staff and legislative staff." *See* R.C. 101.30(B)(1). Prows does not squarely raise this argument, though, and we therefore need not address it. *See State v. West*, 1993-Ohio-201, ¶ 14 ("Because these questions have not been directly raised, briefed or argued before us, we decline to answer [them] . . . .").

{¶ 26} Even if this argument were properly raised, it would not entitle Prows to any relief. "When a public office attests that it does not have responsive records, the relator in a public-records mandamus case bears the burden of proving by clear and convincing evidence that the requested records exist and are maintained by the public office." *State ex rel. Culgan v. Jefferson Cty. Prosecutor*, 2024-Ohio-4715, ¶ 13, citing *State ex rel. Gooden v. Kagel*, 2014-Ohio-869, ¶ 8. Prows has not met that burden here.

{¶ 27} OLSC has attested that "[n]one of the withheld records were communications between 'City of Oxford policy makers' . . . and General Assembly members or [OLSC] staff." The closest Prows comes to adducing contrary evidence is pointing to a supposed "similarity between [Oxford's] taxation ordinance and the language of S.B. 104," which Prows suspects is evidence of collaboration between state and city officials. This connection is, at best, speculation and does not amount to "clear and convincing evidence," *Culgan*, 2024-

Ohio-4715, at ¶ 13, that OLSC has records of contact between any city or municipal officials and state legislators or legislative staff.

### III.  CONCLUSION

**{¶ 28}** For these reasons, we deny Prows's request for a writ of mandamus.

Writ denied.

_____

Tate D. Prows, pro se.

Dave Yost, Attorney General, and Heather L. Buchanan and Mark. D. Tucker, Assistant Attorneys General, for respondent.

_____